NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| JOSEPH SABOL | : | **Hon. Dennis M. Cavanaugh** |
|  | : |  |
| Plaintiff, | : | **OPINION** |
|  | : |  |
| v. | : | Civil Action No. 06-3214(DMC) |
|  | : |  |
| MONTCLAIR STATE UNIVERSITY | : |  |
|  | : |  |
| Defendant. | : |  |
|  | : |  |

DENNIS M. CAVANAUGH, U.S.D.J.

This matter comes before the Court upon motion by Defendant Montclair State University ("Defendant" or "MSU") for summary judgment pursuant to FED. R. CIV. P. 56(c). Pursuant to Rule 78 of the Federal Rules of Civil Procedure, no oral argument was heard. After carefully considering the submissions of the parties, and based upon the following, it is the finding of this Court that Defendant's motion for summary judgment is **denied.**

## I.    BACKGROUND[1]

This case arises out of the alleged retaliation by Defendant upon Plaintiff Joseph Sabol ("Plaintiff") when it did not hire him for the Head Wrestling Coach/Coordinator of Student Staffing position. Plaintiff alleges that he was the most qualified for the position and that he was retaliated against in violation of Title VII and Title IX of the Civil Rights Act, the New Jersey Conscientious Employee Protection Act ("NJCEPA") and the New Jersey Law Against Discrimination ("NJLAD") because he complained about health and safety issues, the security protocol affecting the wrestlers and the community at large, and the disparate treatment between male and female coaches at MSU.

Plaintiff became a volunteer assistant wrestling coach at MSU in 2001. Soon after, on November 27, 2001, Plaintiff commenced employment with Defendant as an Assistant Wrestling Coach, a part-time salaried position, which was a one year appointment, ending on June 30, 2002. On October 18, 2002, Defendant hired Plaintiff to serve as Acting Head Wrestling Coach, also a part-time salaried position, which was also a one year appointment ending on June 30, 2003. Plaintiff was hired for this position because Head Wrestling Coach, Steve Strellner, was suspended from his employment by the NCAA. On October 21, 2003, Plaintiff was hired to serve as the Assistant Wrestling Coach, a one year appointment, because Coach Strellner's suspension was lifted. Once Coach Strellner's suspension was lifted, he became Plaintiff's immediate supervisor, and both Plaintiff and Coach Strellner reported to Holly Gera, Athletic Director at MSU. Plaintiff retained his Assistant Wrestling Coach position until June 30, 2004, the end of his one year appointment.

In the beginning of 2004, Coach Strellner notified Defendant that he would be resigning from

---

[1]Unless otherwise noted, the facts set forth in this Opinion are taken from the undisputed facts set forth in the parties' Rule 56.1 statements in their respective moving papers, along with the pertinent fact sections of the briefs.

his position as Head Wrestling Coach.  Plaintiff asserts that Coach Strellner recommended that Plaintiff take over as Head Coach. Plaintiff submitted an application for the position of part-time Head Coach, was interviewed by Holly Gera and Robert Chesney, Associate Director of Athletics at MSU, and then hired for that position.  While Plaintiff was head coach, the 2004-2005 wrestling team had the second highest grade point average of all men's athletic teams.  As head coach, Plaintiff complained about health and safety issues to Holly Gera, such as wrestling mats having been damaged by a leak in the ceiling and the wrestling room being used as a thoroughfare, causing bacteria from the traffic to land on the mats, which could lead to skin infections.  Also, Plaintiff complained that there was no wall padding along the sides of the wrestling mats and that there were holes in the vents alongside the wrestling mats with sharp metal gratings covered in mold. Defendant asserts that Plaintiff was offered the part-time head coaching position after he made these complaints to Gera, but Plaintiff counters by asserting that he did not make substantial and formal complaints to Gera until he was Head Coach because as Assistant Coach, he felt he was limited in what he could say. Plaintiff admits that he was told these problems would be remedied, but the only action taken to address the problems was to recondition the mats; the problems continued.

In November 2004, the MSU wrestling team grew to approximately forty-five members. In January 2005, the MSU Administration notified Plaintiff that the wrestling program would be eliminated from MSU's intercollegiate athletics at the conclusion of that season. The lacrosse program was also being eliminated.  Soon after Plaintiff was notified that the wrestling program was being eliminated, Plaintiff quit his full time job as an advertising/sales executive in order to devote his time to saving the wrestling program at MSU.  Through his and other's efforts, several hundred thousand dollars of funds were donated and dedicated to athletics, saving the wrestling and lacrosse

programs. Plaintiff was named Metropolitan Coach of the Year for the 2004-05 season and the wrestling team placed third in their conference.

In January 2005, the wrestling team was illicitly videotaped in their locker room; a videotape was found of the wrestlers showering. There are several issues of material fact surrounding this event. Plaintiff was in San Francisco the day of the event and learned what had transpired the next morning and contacted Holly Gera. The following day, Gera and Plaintiff had a meeting, at which time Gera informed Plaintiff that she planned to fire Rami Ratel, the Assistant Wrestling Coach who had supervised the practice on the day in question, allegedly because Coach Ratel did not immediately inform the university when he discovered the videotaping incident. Coach Ratel stated in his affidavit that he learned of the tape at approximately 10:30 p.m. on the night in question and told the students who found the tape to turn it into the police, which they did the next morning. Coach Ratel notified Plaintiff early in the morning following the discovery of the tape.[2] Plaintiff conveyed to Gera that any action against Coach Ratel was unwarranted. Gera suspended Coach Ratel for the remainder of his employment for failing to promptly report the fact that a videotape was found in the wrestling team's locker room. Plaintiff claims that this suspension was unfair in light of Gera's treatment of female coaches on the MSU staff. Plaintiff claims that the female basketball coach and her assistant were allowed to resign with no adverse action taken against them after it was uncovered that they were having sexual relations with athletes on their team and drinking alcohol with student-athletes in dormitories on campus. As a result, Plaintiff claims that there was a different standard applied to male and female coaches at MSU.

_____

[2]Rami Ratel affidavit, p. 1.

-4-

Defendant asserts that after the female basketball coaches' inappropriate conduct was discovered, Gera scheduled a meeting with the head female basketball coach at which time she advised the coach that disciplinary action may occur, however the female basketball coach resigned before any such action could be taken.

In early 2005, MSU Administration circulated an announcement for the Wrestling Head Coach/Coordinator of Student Staffing, which was a full-time position.  This position had additional responsibilities such as coordinating the student staffing for the athletic department and payroll responsibilities.  A search committee of five MSU employees was formed to review the applications for the new position and select interview candidates.  Robert Chesney chaired this committee. Plaintiff was told that there would be a national search for this position and that he would have to formally apply like any other candidate.  The search committee selected three candidates to be submitted to Holly Gera for consideration, Bruce Haberli ("Haberli"), James Torres ("Torres") and Plaintiff.

Haberli's application materials consisted of a resume, which indicated that he was an Assistant Wrestling Coach at C.W. Post University from 1986 to 1995 and an Empire State Games Coach from 1984 to 1985.  Haberli also served as a New England University Wrestling Association President and Treasurer from 1990 to 1993 and received several coaching awards including 1991 Metropolitan Coach of the Year and New England University Coach of the Year in 1992 and 1993.

Torres' application materials consisted of a cover letter, resume, referrals and a position statement as to his academic philosophy, training philosophy and team mission. Torres was an Assistant Wrestling Coach and Recruiting Coach for the University of Indianapolis and a volunteer

assistant coach at Indiana University. Torres was an assistant to the wrestling team at Menlo College in Atherton, California.  In his cover letter, Torres stated that his job duties included instruction, recruiting, scheduling, budget management and other administrative tasks.

The search committee and Gera assert that Plaintiff's application materials consisted of a cover letter, resume and two referrals, while Plaintiff asserts that he included at least ten references from coaches, referees, MSU professors and parents, all of whom were available upon request, but none were ever contacted in the hiring process. In his cover letter, Plaintiff stated that he had been associated with MSU wrestling for the past four years both as an assistant and head coach and that he quickly recruited over forty wrestlers to the team upon accepting the head coaching position. Further, Plaintiff stated that during his time at MSU, he had built a network of alumni, parents and friends of MSU Wrestling who committed over $100,000 to the program. Plaintiff had a phone interview with the committee and then had a one-on-one interview with Gera during the application process. Gera asserts that Plaintiff made no mention of having any prior experience with student staffing in his application materials, nor did Plaintiff include his coaching experience at MSU on his resume, which Plaintiff admits, but asserts that if any of his references were called, his experience in that area would have come to Defendant's attention.  Plaintiff asserts that he did not include his coaching experience at MSU in his application materials because at the time of the hiring process, he was the head coach at MSU and therefore felt it unnecessary.

Holly Gera testified at her deposition that she had a general impression that Plaintiff would not have been the best fit for the subject position because "it required people to work together in tight quarters with shared facilities and she knew that Plaintiff had not had the experience of working

-6-

in that kind of scenario."[3]  Further, regarding Plaintiff working to reinstate the wrestling program,

Gera testified that she would have handled things differently than Plaintiff.  Gera stated that she

would have done things similar to what the lacrosse coach did when that program was discontinued,

but then admitted that she did not know whether the lacrosse program would have been reinstated

without Plaintiff's efforts.[4]

Gera maintains that the committee recommended Haberli for the position and Gera decided

to hire Haberli, but he declined.  Next, Gera offered the position to Torres who accepted.  Gera

asserts that Torres was hired based on his references, his position statement and the fact that he was

in the process of obtaining a master's degree, as well as his interview and prior experience in student

staffing.  Plaintiff denies that this could be true, as Torres had never had any experience as a head

wrestling coach and Plaintiff had more experience in a collegiate setting with collegiate wrestling.

Plaintiff maintains that Gera never planned to hire him.  Gera stated at her deposition that she wrote

in an email that she was told that the committee forwarded Plaintiff as a finalist as a courtesy, but

that he would not have been number three.[5]

MSU asserts that Plaintiff was not terminated from his position, and Plaintiff agrees, but

maintains that he was not hired for the position he successfully held the previous season, and that

action was tantamount to termination. Further, Plaintiff points out that Haberli stated that he "did

not know why [Defendant] didn't offer [Plaintiff] the job...if I'm applying for that job and he's

---

[3]Holly Gera Deposition, 117:16-25 through 118:1-7.

[4]Holly Gera Deposition, 118:18-25 through 119:1-23.

[5]Holly Gera Deposition, 115:18-22.

applying for that job, I'd still pick [Plaintiff] before me because of everything he's done for that program. I don't know what happened. I kind of find it unusual."[6]

## II.    STANDARD OF REVIEW

Summary judgment is granted only if all probative materials of record, viewed with all inferences in favor of the non-moving party, demonstrate that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986).  The moving party bears the burden of showing that there is no genuine issue of fact.  Id.  "The burden has two distinct components: an initial burden of production, which shifts to the nonmoving party if satisfied by the moving party; and an ultimate burden of persuasion, which always remains on the moving party."  Id.  The non-moving party "may not rest upon the mere allegations or denials of his pleading" to satisfy this burden, but must produce sufficient evidence to support a jury verdict in his favor.  Fed. R. Civ. P. 56(e); see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). Additionally, it should be noted that a genuine issue of material fact exists if "a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

"[U]nsupported allegations in [a] memorandum and pleadings are insufficient to repel summary judgment," Schoch v. First Fid. Bancorporation, 912 F.2d 654, 657 (3d Cir. 1990), however, "[i]n determining whether there are any issues of material fact, the Court must resolve all doubts as to the existence of a material fact against the moving party and draw all reasonable inferences - including issues of credibility - in favor of the nonmoving party." Newsome v. Admin.

---

[6]Exhibit H to Fish Affirmation, Outrage over hiring decision.

Office of the Courts of the State of N.J., 103 F. Supp.2d 807, 815 (D.N.J. 2000) aff'd, 51 Fed. Appx. 76 (3d Cir. 2002) (citing Watts v. Univ. of Del., 622 F.2d 47, 50 (D.N.J. 1980)). Summary judgment should be used sparingly when, as is often the case in sexual harassment claims, state of mind or intent are at issue, but plaintiffs may not avoid summary judgment by simply declaring that state of mind is at issue. See Domm v. Jersey Printing Co., 871 F. Supp. 732 (D.N.J. 1994) and FED. R. CIV. P. 56(c).

## III.   DISCUSSION

After carefully reviewing the papers submitted by the parties, Defendant's motion for summary judgment is **denied.** There are issues of material fact relating to the purported reasons for Defendant's hiring of Haberli and then Torres, when Plaintiff had been a successful head coach at the school and was apparently qualified for the job. The parties agree that MSU has wide discretion to hire the candidate thought to be most qualified for the job. Plaintiff, however has offered evidence which raises an issue of fact regarding the motive behind Defendant's decision to not hire Plaintiff for the full-time Head Coach/Coordinator of Student Staffing position. This leaves a question for a jury to determine whether Plaintiff was unlawfully retaliated against because of his complaints about health and safety, security and sex discrimination.

In its reply, Defendant states that Plaintiff cannot simply show that the employer's decision was wrong or mistaken, since the factual dispute at issue is whether retaliatory animus motivated the employer, not whether the employer is wise, shrewd, prudent or competent. See Silvestre v. Bell Atlantic Corp., 973 F.Supp. 475, 483(D.N.J. 1997) (quoting Fuentes v. Perksie,

32 F.3d 759, 765 (3d Cir. 1994)). (Def.'s Reply, p.4).  Here, the factual dispute is over

Defendant's motivation in not hiring Plaintiff and whether that motivation was retaliation for

Plaintiff's complaints about health and safety, security and sex discrimination; summary

judgment is therefore **denied**.

IV.    <u>C</u><small>ONCLUSION</small>

     For the reasons stated, it is the finding of this Court that Defendant Montclair State

University's motion for summary judgement is **denied**. An appropriate Order accompanies this

Opinion.

                                 S/ Dennis M. Cavanaugh

                                 Dennis M. Cavanaugh, U.S.D.J.

Date:       June  _3_ , 2008
Orig.:     Clerk
cc:       Counsel of Record
            The Honorable Mark Falk, U.S.M.J.
            File